## Case No. 16,007.

### UNITED STATES v. PATTEN et al.

[Holmes, 421.] [2]

Circuit Court, D. Maine.  Sept., 1874.

SHIPPING—"COASTWISE" AND "FOREIGN" TRADE—
DUTIES ON MATERIALS FOR REPAIRS.

1. The term "foreign trade" as used in the tenth section of the act of June 1, 1872 (17 Stat. 238), includes trade between the Atlantic and Pacific ports of the United States.

2. The term "coastwise trade," as used in that section, does not include trade between the Atlantic and Pacific ports of the United States.

3. An American vessel previously engaged exclusively in foreign trade, was repaired in Boston, and thence sailed in ballast, via New York, to San Francisco for a cargo to Europe, and thereafter was engaged exclusively in foreign trade. In an action by the United States to recover duties on articles of foreign production withdrawn from the United States bonded warehouse in Boston under the tenth section of the act of June 1, 1872 (17 Stat. 238), and used in the repairing, held, that the vessel was engaged exclusively in "foreign trade," and had not by the voyage to San Francisco engaged in "coastwise trade" within the meaning of those terms as used in that section; and that the articles withdrawn from bond and used in the repairing were exempt from duty.

[Cited in Russell v. U. S., Case No. 12,164.]

Action at law [against Jarvis Patten and others] to recover duties on materials used in the repair of the ship Matterhorn. The case was heard by the court on an agreed statement of facts, the material parts of which are stated in the opinion.

Nathan Webb, for plaintiff.
A. P. Gould, for defendants.

SHEPLEY, Circuit Judge. The ship Matterhorn was built at Bath, in the district of Maine, in the year 1866. She was exclusively engaged in foreign trade after her first

1 [Reported by Hon. William Cranch, Chief Judge.]
2 [Reported by Jabez S. Holmes, Esq., and here reprinted by permission.]

voyage from Bath to New Orleans in September, 1866, until her arrival in Boston from Calcutta in the fall of 1872. In October, 1872, she was repaired, and for the purpose of repairing her copper a quantity of yellow metal and composition nails were withdrawn from the bonded warehouse in Boston as free of duty, and used in the repair of the ship. The ship then sailed in ballast via New York to San Francisco for the purpose of obtaining a grain freight to Europe. With a cargo of grain the ship sailed from San Francisco to Havre, thence to New Orleans, thence to Antwerp, thence to Cardiff, and thence to Rio Janeiro, during which voyage this action was commenced. The action is brought to recover the duties on the yellow metal and composition nails, on the ground that the defendants, by sending the ship from New York to San Francisco, had engaged in the coasting trade for more than two months in one year, and thus rendered themselves liable for the duties on which a rebate had been allowed; and on the further ground, that the vessel was not exclusively engaged in the foreign trade.

The tenth section of the act of June 1, 1872 (17 Stat. 238), provides: "That from and after the passage of this act all lumber, &c., and copper and composition metal, which may be necessary for the construction and equipment of vessels built in the United States for the purpose of being employed in the foreign trade, including the trade between the Atlantic and Pacific ports of the United States, and finished after the passage of this act, may be imported in bond under such regulations as the secretary of the treasury may prescribe; and upon proof that such materials have been used for the purpose aforesaid, no duties shall be paid thereon: provided, that vessels receiving the benefits of this section shall not be allowed to engage in the coastwise trade of the United States more than two months in any one year, except upon the payment to the United States of the duties on which a rebate is hereby allowed: and provided further, that all articles of foreign production needed for the repair of American vessels engaged exclusively in foreign trade may be withdrawn from bonded warehouses free of duty under such regulations as the secretary of the treasury may prescribe."

The first clause in the section relates to certain materials used in the construction and equipment of vessels built in the United States and finished after the passage of the act for the purpose of being employed in the foreign trade; and for the purposes of that clause in the section it defines the term "foreign trade" as "including the trade between the Atlantic and Pacific ports of the United States." Materials described in the statute used for the construction and equipment of such vessels may be withdrawn from bond free of duty.

It is well known that vessels engaged in

the foreign trade frequently sail from the ports of the United States in which they are built and registered to other ports in the United States to obtain a freight for a foreign port. This is the case with freighting ships built in Northern ports and sailing in ballast to Southern ports for a cargo of cotton. It is well known that such vessels, having discharged their cargo of cotton or grain in foreign ports, seldom return directly to the ports from which they sailed, but frequently take return cargoes of merchandise to New York or other ports, into which the importations are much greater. The result is that vessels engaged in the foreign trade must necessarily sail also very frequently between those ports in the United States where they discharge their foreign cargoes and the other ports from which they load for foreign ports. They must necessarily (unless they go in ballast, and perhaps even then) be engaged during some portion of the year in the coastwise trade. In view of this necessity, and in view of the fact that the benefits of the statute were only intended to encourage and revive the foreign carrying trade in American ships, the first proviso in the statute fixed the period of two months in any one year as the limit of time during which the ship could engage in the coastwise trade without being subject to the payment of the duties on which the rebate is allowed. This, it was evidently supposed, would cover the time during any year in which the vessel employed in the foreign trade would find it necessary to trade between any two or more home ports. But as no vessel could sail from an Atlantic to a Pacific port of the United States in two months, it is clear that if on making such a voyage the terms of the proviso would compel a payment of the duties, the proviso would nullify that part of the first clause which included the trade between the Atlantic and Pacific ports of the United States in the words "foreign trade." Such a construction would be repugnant to common sense and every established rule for the construction of statutes. The "foreign trade" in the first clause includes the trade between the Atlantic and Pacific ports of the United States.

The coastwise trade in the first proviso as clearly excludes those ports. The term "foreign trade" in the first clause is used in a sense broader, and the term "coastwise trade" in the first proviso in a sense narrower, than the literal meaning of those terms. The terms "foreign trade" are then indisputably defined for the purposes of this section, as including the trade between the Atlantic and Pacific ports of the United States. The second proviso relates to articles of foreign production needed for the repair of American vessels engaged exclusively in foreign trade. Foreign trade has been already defined in the same section, and it was not necessary to repeat the definition in the subsequent clauses. It is clear that the foreign trade in the second proviso is the same foreign trade as that which is distinguished from coastwise trade in the first clause and in the first proviso. It includes the trade between the Atlantic and Pacific ports of the United States. Great stress is laid on the word "exclusively" in this proviso. The proviso only extends the benefit of exemption from duty to articles needed for the repair of American vessels engaged exclusively in foreign trade. What foreign trade is, has already, for the purpose of this section, been clearly defined. A vessel is engaged exclusively in the foreign trade when she is trading between a port of the United States and a foreign port, or between two foreign ports, or between the Atlantic and Pacific ports of the United States. The word "exclusively" was not used to limit the definition already given to foreign trade, but to limit the benefits of the section to vessels exclusively engaged in that trade, as already defined.

When the articles of foreign production are to be used in the construction of a new ship, the question of exemption from duty is determined by the fact of the ship being built in the United States for the purpose of being employed in the foreign trade. But even if built for that purpose or with that declared purpose, if she afterwards engages in the coastwise trade for more than two months in any one year she forfeits the benefit of the exemption. In the case of new ships that had not been engaged in any trade, the question was one of intent and purpose of construction. To prevent fraud on the act by building a vessel with a declared purpose of engaging her in foreign trade, and after obtaining remission of duty on the materials used in her construction and equipment, employing her in the coastwise trade, the first proviso was added providing for payment of duties in case of coastwise trade beyond a limited time. In the case of the vessel already built, the question is not one of purpose and intent, but one of past employment. Whether she is entitled to the benefit of exemption of duty depends upon the question of her employment. If engaged in the coastwise trade exclusively, she is not entitled. If engaged indifferently in the coastwise or foreign trade as opportunity is presented or interest may dictate, then she is not entitled. If engaged exclusively in the foreign trade she is entitled, and that foreign trade is the foreign trade defined in the section as including the trade between the Atlantic and Pacific ports. If the word "exclusively" were not used, a shipowner might claim exemption from duty on materials used in the repair of a vessel which was engaged both in coastwise and in foreign trade, or he might take his vessel from the coastwise trade and employ her in a foreign voyage, and on her return repair and recopper her, and claim that the materials were free of duty because she was then engaged in a foreign trade, or under charter for a foreign voyage. To pre-

vent such perversions of the policy of the statute, the word "exclusively" was used to show that the benefit of the statute was applicable only to materials used in the repair of vessels employed in foreign trade, and in foreign trade only.

In the sense in which those terms are used in the tenth section of the act of 1872, the Matterhorn was employed exclusively in the foreign trade, and the materials taken out of bond and used in repairing her were entitled to exemption from duty. If the second proviso is to be construed, as is suggested by the attorney for the United States, as in fact not a proviso affecting the construction or operation of the general provisions in the preceding part of the section, but as a separate and distinct enactment in relation to a different subject, the same result would follow. If that clause is to stand alone, without any reference to the clauses preceding it in the same section, then, if the vessel were a vessel engaged in the foreign trade when the repairs were made, the articles used in the repairs were free of duty. Whatever employment the vessel might subsequently be engaged in would not forfeit the right to exemption to duty under that clause alone without reference to what precedes it. The Matterhorn, up to the time when the repairs were made, had been engaged exclusively in the foreign trade in its literal sense. The materials used in her repair were entitled to exemption. If by reason of her subsequent employment in a voyage between an Atlantic and a Pacific port of the United States it is claimed that the duties which had been rebated became payable, it must be by reason of what is contained in the previous clause, but, as we have already seen, the previous clause does not embrace such a voyage in the coastwise trade.

Judgment for defendants.